UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES COURT SECURITY
OFFICERS,

         **Plaintiff,**

 vs.             1:24-CV-1246
                   (MAD/ML)
CENTERRA GROUP, LLC,

         **Defendant.**
_____

APPEARANCES:        OF COUNSEL:

**COHEN, WEISS AND SIMON LLP**  **KATE M. SWEARENGEN, ESQ.**
909 Third Avenue – 12th Floor    **MATTHEW E. STOLZ, ESQ.**
New York, New York 10022-4731
Attorneys for Plaintiff

**OGLETREE, DEAKINS, NASH,**   **ROBERT S. DELUCA, ESQ.**
**SMOAK & STEWART, P.C.**
50 Fountain Plaza – 14th Floor
Buffalo, New York 14202
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

  Plaintiff United States Court Security Officers ("Union" or "USCSO") commenced this action seeking confirmation of an arbitration damages award pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 28 U.S.C. § 185. *See* Dkt. No. 1. Currently before the Court is Defendant Centerra Group, LLC's ("Defendant" or "Centerra") motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim. *See* Dkt. No. 11.

### II. BACKGROUND

Centerra provided court security officers ("CSO") to perform guard duties at federal courthouses, including, but not limited to, those federal courthouses located in the Northern District of New York, pursuant to a contract with the United States Marshals Service ("USMS"). *See* Dkt. No. 11-2 at ¶ 4. Centerra and USCSO entered into a collective bargaining agreement effective October 1, 2022, that affected the terms and conditions of, among other things, Plaintiff's CSOs who worked at the James M. Hanley Federal Building and U.S. Courthouse, United States District Court, Northern District of New York, 100 S. Clinton Street, Syracuse, New York 13261. *See id.* at ¶ 5.

At all times relevant to the instant action, CSO David VanDusen ("Grievant") was a member of the Union, though his employment was terminated by Centerra on November 10, 2022, due to Grievant's workplace misconduct. *See* Dkt. No. 11-3 at 3. On November 17, 2022, the Union filed a grievance challenging the termination of Grievant's employment, and the matter proceeded to binding arbitration. *See* Dkt. No. 11-1 at ¶ 5.

Prior to the arbitration hearing, the parties submitted two issues for the Arbitrator to decide: (1) "Was the termination of David VanDusen for just cause?"; and (2) "If not, what shall be the remedy?" *See id.* at ¶ 6; Dkt. No. 11-2 at ¶ 7; Dkt. No. 11-3 at 2. On September 8, 2023, Arbitrator Timothy W. Gorman issued an Opinion and Award (the "Award") in FMCS Case No. 231219-01965. *See* Dkt. No. 1 at ¶ 2. The Award provided for Grievant's reinstatement and back pay, upon a finding that Grievant was terminated without just cause. *See id.* The Award reduced the termination to a fifteen-day suspension without pay and directed Centerra to pay Grievant "back pay (less the 15-day suspension) and accrued benefits from the date of his termination to the date of his reinstatement, including any loss of seniority that he may have incurred." *Id.* at ¶ 3. The Award further provided that "[t]his back-pay amount will be less any interim earnings that

2

the grievant may have earned from his date of termination to his date of reinstatement, or any unemployment compensation that the grievant may have received during this period.  In the event the parties cannot agree on the application of this award, I shall retain jurisdiction for 60 days to hear only this issue." Dkt. No. 15-2 at 54.

USCSO alleges that, between September 12, 2023, when USCSO received the Award, and October 25, 2023, it emailed Centerra on four separate occasions as to Centerra's obligation to comply with the Award, including the issue of back pay.  Centerra, however, did not respond to USCSO's communications.  *See* Dkt. No. 1 at ¶¶ 10-11, 13-14; Dkt. No. 15-1 at ¶¶ 8-9, 11-12.

On October 30, 2023, USCSO emailed the Arbitrator, copying Centerra.  USCSO wrote "we need your assistance in resolving a dispute concerning backpay.  By the grievant's calculations, his backpay through September 30, 2023, less the 15 days' suspension, is $71,936.63.  He had no interim earnings and did not receive unemployment insurance ... The Union reserves the right to seek backpay through the grievant's date of reinstatement, which has not yet occurred.  But for the moment, we would like to resolve the backpay owed for dates prior to October 1, 2023.  Your assistance is respectfully requested as per the award, you have retained jurisdiction over backpay." Dkt. No. 1 at ¶ 15.

On October 31, 2023, the Arbitrator responded, copying Centerra.  The Arbitrator wrote as follows: "As both parties know I retained jurisdiction over the award in case the parties were unable to come to agreement as to a back pay award amount.  As I have retained jurisdiction, I am directing the parties to negotiate this award and reach a settlement amount by November 8, 2023.  If the parties are unable to agree upon a back pay amount by this date, I will then direct the parties to brief the back pay award issue.  These briefs will be due to me by November 17, 2023 (via email) and should cover three areas: 1. The total amount of the back-pay believed to be due to Mr.

3

VanDusen, 2. How this back-pay amount was calculated, and 3. Any documentation that would support this calculation." *Id.* at ¶ 16.

On November 1, 2023, USCSO emailed Centerra the following message: "Following up on the Arbitrator's direction, below, USCSO is reiterating its demand that Centerra pay David VanDusen backpay in the amount of $71,936.63, less applicable deductions. As previously stated, this amount represents VanDusen's backpay less the 15-day suspension the Arbitrator imposed. As previously stated, VanDusen had no interim earnings and did not receive unemployment insurance. Let me know if you would like me to provide you with a breakdown of our calculations." *Id.* at ¶ 17.

On November 8, 2023, USCSO emailed the Arbitrator, copying Centerra, advising that consistent with the Arbitrator's directive, it had emailed Centerra about the Union's back pay demand, but had not heard back from Centerra, and so it was planning to brief the back pay issue and would transmit the brief by November 17, 2023. *See id.* at ¶ 19. On November 9, 2023, USCSO was served with Centerra's lawsuit seeking to vacate the Award. *See id.* at ¶ 20.[1]

On November 14, 2023, USCSO submitted its back pay brief to the Arbitrator. *See* Dkt. No. 1 at ¶ 21. USCSO explained that although the Award issued prior to what Centerra had represented was its deadline for processing new applications (September 15, 2023), and although USCSO made Centerra aware on September 12 of the Award and the Union's expectation that Centerra reinstate the Grievant immediately, Centerra did not put the Grievant forward for

---

[1] Centerra commenced their suit on November 3, 2023, pursuant to Section 301 of the LMRA, seeking to modify, correct or vacate the Award. *See Centerra Group, LLC v. United States Court Security Officers Union*, No. 1:23-cv-1391 (N.D.N.Y.). In a September 9, 2024, Memorandum-Decision and Order, this Court granted USCSO's motion for summary judgment, denied Centerra's cross motion for summary judgment, and affirmed the arbitral award. *See id.*, Dkt. No. 20 at 19. Centerra has appealed this Court's decision, which is currently pending before the Second Circuit.

4

reinstatement until after September 15, 2023.[2]  USCSO further explained that the Grievant had since sought reinstatement through Walden Security, but that his reinstatement would ultimately depend on whether Walden agreed to submit the Grievant to the Marshals Service, and then whether the Marshals Service approved the Grievant to work, which would likely require the Grievant to submit to a new physical examination and qualify at the range.  Accordingly, since whether and when the Grievant would return to work was so uncertain, USCSO explained in its back pay brief that it "desires, for the time being, that Mr. VanDusen immediately receive backpay through September 30, 2023 (Centerra's last day as the employer of Court Security Officers in the Second Circuit).  When USCSO has more details about the date of Mr. VanDusen's reinstatement, the Union will seek backpay for that additional period (which the Arbitrator awarded)." *Id.* at ¶ 24; *see also* Dkt. No. 15-2 at 177-82.  Additionally, in its brief, USCSO advised the Arbitrator that Centerra had filed suit to vacate the Award, and included a copy of the suit as an exhibit.  *See id.*; *see also* Dkt. No. 15-1 at ¶ 25.  Centerra did not submit a back pay brief to the Arbitrator as directed.  *See* Dkt. No. 15-2 at 354.

On December 1, 2023, the Arbitrator issued his Supplemental Award, directing Centerra to pay Grievant back pay in the sum of $71,936.63, representing Grievant's owed pay through September 30, 2023.  *See id.* at 348-55.  The Supplemental Award was delivered to USCSO on December 5, 2023.  *See* Dkt. No. 1 at ¶¶ 27-28.

As noted above, on September 9, 2024, this Court issued its Memorandum-Decision and Order in *Centerra Group, LLC v. United States Court Security Officers Union*, No. 1:23-cv-1391

---

[2] As discussed in the previously filed related action, as of October 1, 2023, Centerra is no longer contracted by the United States Marshals Service for the provision of CSOs at federal courthouses in the Second Circuit.  Rather, Walden Security is now the contractor providing CSOs in the Second Circuit.  As of September 15, 2023, Centerra no longer accepted applications for employment as a CSO.

(N.D.N.Y.) confirming the Award. Following issuance of this Court's Memorandum-Decision and Order, USCSO contacted Centerra via email and telephone to ascertain whether Centerra intended to pay Grievant the back pay required by the Supplemental Award. *See* Dkt. No. 1 at ¶ 30. Centerra did not respond. Accordingly, USCSO filed this suit on October 10, 2024, within one year of the delivery of the Supplemental Award, seeking a judgment to enforce in the event that Centerra failed and/or refused to pay Grievant in accordance with the Supplemental Award.

### III. DISCUSSION

#### A.    Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see* Fed. R. Civ. P. 12(b)(1). "'A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova*, 201 F.3d at 113). When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true, but does not draw inferences from the complaint favorable to the plaintiff. *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). The court may "resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings." *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-

pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of the 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the [] complaint must be dismissed[,]" *id.* at 570.

**B.    Centerra's Motion**

In its motion, Centerra contends that this Court lacks subject matter jurisdiction over USCSO's request to confirm the Arbitrator's Supplemental Award pursuant to Section 301 of the LMRA because the "arbitration proceeding is not 'final and binding.'" Dkt. No. 11-5 at 13-14. Centerra argues that the complaint make clear that the Union "intends to seek additional relief on behalf of Grievant, making the arbitration an open, pending, and non-final proceeding." *Id.* at 14. In response, USCSO argues that "it is well established that interim arbitration awards are ripe for judicial review even if the arbitrator has retained jurisdiction to address further issues such as damages, notwithstanding the 'final arbitration rule' ... So long as an award resolves a discrete issue with finality, the award on that issue is ripe for judicial review when there are further outstanding issues the parties have asked the arbitrator to resolve." Dkt. No. 15 at 12-13 (citations omitted).

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, rather than the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, provides that federal district courts have jurisdiction over violations of labor contracts. *See Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536, 545 n.13 (2d Cir. 2016). Actions to confirm and vacate arbitration awards fall within the scope of Section 301. *See, e.g.*, *Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998); *Kallen v. Dist. 1199, Nat'l Union of Hosp. & Health Care Emps.*, 574 F.2d 723, 725 (2d Cir. 1978). At the same time, federal courts enforcing labor arbitration awards look to the FAA "to guide the development of rules of federal common law to govern [ ] disputes [regarding labor contracts] pursuant to the authority to develop such rules granted under 29 U.S.C. § 185." *Supreme Oil Co. v. Abondolo*, 568 F. Supp. 2d 401, 405 n.2 (S.D.N.Y. 2008) (citations omitted); *see also United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 n.9 (1987).

Federal courts have jurisdiction under the LMRA to confirm "final and binding" arbitration awards. *See Gen. Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963). Ordinarily, in order for an award to be deemed "final" and thus ripe for judicial review, "the arbitrators must have decided not only the issue of liability of a party on the claim, but also the issue of damages." *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 413-14 (2d Cir. 1980). An exception to this general rule applies where the parties agree to bifurcate the issues of liability and damages. *See Trade & Transp., Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191, 194-95 (2d Cir. 1991); *Global Gold Mining LLC v. Caldera Res., Inc.*, 941 F. Supp. 2d 374, 382-83 (S.D.N.Y. 2013); *Mitsubishi Heavy Indus., Ltd. v. Stone & Webster, Inc.*, No. 08 Civ. 509, 2009 WL 3169973, *5 (S.D.N.Y. Sept. 29, 2009); *Andrea Doreen, Ltd. v. Bldg. Material Local Union 282*, 250 F. Supp. 2d 107, 112 (E.D.N.Y. 2003). A related exception provides that a partial award is reviewable if it finally disposes of a "separate and independent claim." *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986).

### 1. *Judicial Review of Interim/Partial Awards*

As USCSO notes, in the Second Circuit, it is well established that "interim" arbitration awards are ripe for judicial review even if the arbitrator has retained jurisdiction to address further issues such as damages, notwithstanding the "final arbitration rule" expressed in cases such as *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411 (2d Cir. 1980). So long as an award resolves a discrete issue with finality, the award on that issue is ripe for judicial review when there are further outstanding issues the parties have asked the arbitrator to resolve. *See Metallgesellschaft*, 790 F.2d at 283 (holding that "[a]n award which finally and definitely disposes of a separate

independent claim may be confirmed although it does not dispose of all the claims that were submitted to arbitration").

In *Metallgesellschaft*, the Second Circuit clarified the rule it announced earlier in *Michaels*. *See id.* at 282-83. The court clarified that the interim arbitration award in *Michaels* had not been final and ripe for judicial review because it only issued a decision on liability and damages for five of the six counterclaims and none of the original claims presented to the arbitrator, even though those claims and counterclaims were not "separate" and "independent" from one another. *See id.* In *Metallgesellschaft*, on the other hand, the issue decided in the arbitrators' interim award "was independent and separate from the remaining issues before the arbitrators and could be finally determined without reference to [the remaining issues]." *Id.* at 282. Stated another way, an interim arbitration award is "final" and ripe for judicial review when it definitively resolves a discrete issue that is independent of the remaining unresolved issues. The Second Circuit further clarified in *Trade & Transport, Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191 (2d Cir. 1991) that when the parties agree to bifurcate the liability and damages portion of an arbitration award, an interim award on liability alone is final and ripe for judicial review. *See id.* at 195.

Following *Metallgesellschaft* and *Trade & Transport*, courts in the Second Circuit routinely address petitions to confirm or vacate interim labor arbitration awards in situations where the arbitrator has decided one issue definitively but left other issues open for negotiations or further arbitral proceedings. For example, courts routinely entertain motions to confirm or vacate an arbitrator's liability finding before the arbitrator has issued an award on damages (as this Court did in Centerra's prior action seeking to vacate the Award). *See Andrea Doreen, Ltd. v. Building Material Local Union 282*, 250 F. Supp. 2d 107, 112-13 (E.D.N.Y. 2003) (holding that

10

the arbitrator "'finally and definitively' found [the employer] liable; therefore, the liability award by the Arbitrator can be confirmed notwithstanding the absence of an award that finally disposes of the remedy submitted to arbitration"); *Corporate Printing Co. v. N.Y. Typographical Union No. 6*, No. 93 CIV. 6796, 1994 WL 376093, *5 (S.D.N.Y. July 18, 1994) (holding that the interim liability award was ripe for judicial review because it resolved the issue of liability with finality, even with damages yet to be determined); *RHC Operating LLC v. N.Y. Hotel & Motel Trades Council*, No. 21-cv 10349, 2022 WL 1810305, *7 (S.D.N.Y. June 2, 2022) ("That the Award's remedy may be modified in light of the parties' future dealings does not render the Award non-final"); *see also Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, Shopmen's Loc. Union 501 v. Burtman Iron Works, Inc.*, 928 F. Supp. 83, 86-88 (D. Mass. 1996) (holding that the arbitrator's interim liability award was final and ripe for judicial review even though he retained jurisdiction to issue a supplemental award on damages, so there was no need to wait for a "determination of the precise amount of back pay, whether or not there are ancillary issues relating to its calculation").

Moreover, courts routinely consider motions to confirm or vacate interim damages awards where the arbitrator retains jurisdiction to consider future potential damages. *See Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am.*, 47 F.3d 14, 16 (2d Cir. 1995) (holding that "the reservation of jurisdiction over a detail like overseeing the precise amount of back pay owed does not affect the finality of an arbitrator's award") (citing *Dreis & Krump Mfg. Co. v. IAM District No. 8*, 802 F.2d 247, 250 (7th Cir. 1986)); *Private Sanitation Union Local 813 v. V & J Rubbish Removal*, No. 89 CIV. 5945, 1990 WL 144207, *2-3 (S.D.N.Y. Sept. 26, 1990) (holding that arbitrator's award was final where the arbitrator determined liability and awarded damages through the final day of the arbitration hearings, but retained jurisdiction and left open

the issue of damages owed for any continuing violations beyond the final day of arbitration); *Local 144, Hotel, Hosp., Nursing Home & Allied Servs. Union v. CNH Mgmt. Assocs., Inc.*, 669 F. Supp. 632, 634 (S.D.N.Y. 1987) (confirming award of $6,271,240 in back pay and interest payable into escrow account, even though final award had not been issued, because this was the minimum damages liability and it was found to be highly likely that the union would prevail on the merits). As such, the law in the Second Circuit is clear that, when an arbitrator determines the damages owed for a discrete time period but leaves open the possibility that further damages could be awarded for future time periods or independent bases of liability, the initial damages award is final and ripe for review even if future damages may still be awarded. *See Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007) (confirming a series of interim arbitration awards issued during an ongoing dispute: "Each order was specific and final and did not need to be followed by a concluding award").

Here, the Arbitrator issued two discrete and independently confirmable awards. First, in the Award, the Arbitrator ruled that Centerra violated the CBA by terminating Grievant without just cause.[3] Second, in the Supplemental Award, the Arbitrator ordered Centerra to pay Grievant $71,936.63 in back pay calculated through September 30, 2023. The Supplemental Award finally and conclusively establishes the damages owed through September 30, 2023, and the Arbitrator has no jurisdiction to reopen that issue. *See Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 177 (2d Cir. 1998). Although Centerra is correct that USCSO may petition the Arbitrator at a future date to award further damages accruing after September 30, 2023, any future action by the Arbitrator will not result in a change to the Supplemental Award.

---

[3] Although Centerra has now taken the position before the Second Circuit that the Award was not final, it was Centerra who initiated the first action in this Court seeking to vacate the Award.

Accordingly, the Supplemental Award is a discrete, final award of damages for a specific time period, and as a result it is a final award ripe for judicial review.

Centerra cites three labor arbitration cases from courts in the Second Circuit in support of its argument that the Supplemental Award is not a final award ripe for judicial review – *Time Warner Cable of NYC LLC v. IBEW Local Union No. 3*, No. 15-cv-700, 2015 WL 2454122 (E.D.N.Y. May 22, 2015); *Mason Tenders Dist. Council of Greater New York & Long Island v. CAC of New York Inc.*, 46 F. Supp. 3d 432 (S.D.N.Y. 2014); and *Pfizer Inc. v. ICWUC/UFCW Locals 95C*, No. 13-cv-1998, 2014 WL 1275842 (S.D.N.Y. Mar. 24, 2014). None of these cases support Centerra's argument that the Supplemental Award is not a final award.

In *Pfizer*, the employer petitioned to vacate an initial liability award before the arbitrator considered damages. *See Pfizer*, 2014 WL 1275842, at *3. The union argued that the liability award was not ripe for judicial review because the liability and damages determinations were intertwined with one another and because the liability award did not explicitly state that it was a final award on liability. *See id.* at *4-5. The court disagreed, holding that because the parties had agreed to bifurcate the liability and damages awards, the liability award was final and ripe for judicial review, even if there was no clear statement in the liability award itself that the award was "final." *Id.* at *5. As such, *Pfizer* does not counsel, as Centerra contends, that an arbitration award is only final and reviewable when "the arbitrator's jurisdiction over the matter is concluded because the arbitrator has resolved all issues of liability and damages." Dkt. No. 11-5 at 15. Rather, *Pfizer* counsels that interim arbitration awards are final and reviewable when they resolve discrete issues the parties have agreed to consider separately.

In *CAC*, the court decided that an interim liability award was not final or ripe for judicial review only after finding that the award did not in fact definitively and finally resolve all issues

13

relating to liability. *See CAC*, 46 F. Supp. 3d at 436. Moreover, though the court noted that interim awards can be ripe for review if the parties agree to bifurcate liability and damages, the court held that the plaintiff did "not even raise the bifurcation exception, let alone proffer an argument as to its applicability." *Id.* Here, the Supplemental Award finally and definitively resolved all issues regarding damages accrued before September 30, 2023, and Centerra has not argued that there is any basis for the Arbitrator to reconsider the Supplemental Award.

Finally, as the Union notes, *Time Warner Cable* holds, without any substantive analysis, that an interim award was not final because "[t]he arbitrator did not intend for it to be final." *Time Warner Cable*, 2015 WL 2454122, at *5. The *Time Warner Cable* court did not cite or engage with the controlling Second Circuit precedent from *Metallgesellschaft* and *Trade & Transport*, and, therefore, its persuasive value is minimal. Regardless, there is no evidence here that the Arbitrator did not intend for the Supplemental Award to be final. The document is captioned as an "Opinion and Award," not an "Interim Award," and requires specific, immediate action that is not contingent upon the Arbitrator's decision in any subsequent award.

Contrary to Centerra's argument that "the Arbitrator could not have reasonably believed his work on this arbitral matter was finished and that his work would be reviewed by the Courts," Dkt. No. 11-5 at 16, the record evidence suggests otherwise. First, unlike the Award, the Supplemental Award did not state that the Arbitrator would continue to retain jurisdiction over application of the remedy. *See Loc. 144, Hotel, Hosp., Nursing Home & Allied Servs. Union v. Am. Nursing Home*, 631 F. Supp. 354, 359 (S.D.N.Y. 1986) ("Since [the arbitrator's] award does not in any away suggest that she intended to reconsider the question before her at a future time, I conclude that the award is final, and not an interim decision"). Second, the Arbitrator was perfectly aware that Centerra had already sought judicial review of the original Award because

14

the Union informed him in its submission in support of the Supplement Award.  Given those facts, the Union is correct that the more reasonable conclusion is that the Supplemental Award is a final award ripe for judicial review.

In its motion and reply, Centerra contends that the parties did not intend or expressly agree for the arbitration to be bifurcated into a liability phase and damages phase.  *See* Dkt. No. 11-5 at 7-8; Dkt. No. 22 at 14-15.  Centerra's argument is disingenuous, at best.  First, the Court notes that upon receipt of the Award as to liability, Centerra clearly believed the Award to be a final, partial award, since it commenced an action in this Court seeking to vacate that award.[4]  Regardless of whether the parties expressly stated their intent to bifurcate the arbitration proceeding, their actions clearly manifested that intent.  As USCSO notes, the parties both limited their briefing and evidence presented at the arbitration proceeding to the issue of liability.  Since USCSO prevailed in the initial phase of arbitration, additional proceedings before the Arbitrator were then necessary to address the issue of back pay, absent an agreement between the parties.  In similar circumstances, courts have concluded that a bifurcated liability award is final and subject to judicial review.  *See Hart Surgical, Inc. v. Ultracision, Inc.*, 244 F.3d 231, 235 (1st Cir. 2001) (relying on Second Circuit precedents in concluding a decision as to liability alone was final where the parties "submitted, in a discrete proceeding, all of the evidence pertaining to the issue of liability") (citing *Trade & Transport, Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991)); *McGregor Van De Moere, Inc. v. Paychex, Inc.*, 927 F. Supp. 616, 617 (W.D.N.Y. 1996) (concluding that the parties' decision to bifurcate the issue of liability from damages reflects their agreement that the award on this issue will be final even in the absence of

---

[4] As noted above, clearly unsatisfied with the result in this Court, Centerra has since appealed this Court's Memorandum-Decision and Order to the Second Circuit, now taking the position that this Court lacked subject matter jurisdiction over the very suit Centerra commenced.

an explicit agreement); *Corp. Printing Co. v. N.Y. Typographical Union No. 6*, No. 93 CIV 6796, 1994 WL 376093, *4 (S.D.N.Y. July 18, 1994) (citing *Trade & Transport* as "persuasive authority" that a bifurcated liability award is final for review); *Andrea Doreen, Ltd. v. Building Material Local Union 282*, 250 F. Supp. 2d 107, 112 (E.D.N.Y. 2003) (holding that the determination as to liability was a final award ripe for judicial review and noting that the submissions by the parties to the arbitrator is relevant in determining whether the parties agreed to bifurcate liability from damages in the absence of an explicit agreement); *cf. Seneca Nation of Indians v. New York*, 420 F. Supp. 3d 89, 100 (W.D.N.Y. 2019) (holding that partial final arbitration award was not final where, among other things, the arbitration proceeding itself was not bifurcated, and because the parties did not limit their arbitration submissions to the issue of liability alone).

Centerra represents throughout its papers that it "objected" or "did not consent" to the Arbitrator bifurcating the award, the Arbitrator retaining jurisdiction over the matter to render a further award as to damages, any proceeding related to the Union's attempt to obtain economic damages for the Grievant, the possibility of an award calculating back pay, the Arbitrator hearing argument about the Grievant's damages claim, or the Arbitrator issuing a damages award. *See* Dkt. No. 11-1 at ¶¶ 6, 8-13, 16, 18. Despite these representations, Centerra did not at any time prior to its response to this action verbalize such objections to the Union, its counsel, or to the Arbitrator. Rather, Centerra was non-responsive to the Union's communications about this matter and to the Arbitrator's directives. To the extent that Centerra believed that its filing of a suit to vacate the Award should have put the Union or the Arbitrator on notice that it was objecting to the Arbitrator's continued jurisdiction over the damages case, this argument is without merit. Nowhere in its suit seeking to vacate the Award did Centerra object to the Arbitrator retaining

16

jurisdiction over the issue of damages and Centerra never filed suit seeking to enjoin the back pay proceeding. If Centerra truly did not consent to bifurcation, it had an obligation to register its objection during either the initial arbitration proceeding (when no evidence on damages was presented by either party), in its attempt to vacate the Award in this Court, or in the supplemental briefing ordered by the Arbitrator for purposes of determining the issue of back pay (which it did not submit). *See Cook Indus., Inc. v. C. Itoh & Co.*, 449 F.2d 106, 107-08 (2d Cir. 1971) (holding that a party "cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first"). Centerra's decision to not participate in the damages stage of the arbitration, without providing any reason for such non-participation, does not constitute an objection to the Arbitrator's decision to bifurcate the award and its arguments to the contrary are unpersuasive.[5]

Finally, the Court holds that Centerra's speculation about future action by the Arbitrator is irrelevant in determining whether the Supplemental Award is final and ripe for judicial review. USCSO has made clear in this case, as well as in the underlying proceeding, that in seeking back pay for the Grievant through September 30, 2023, it did not waive the right to seek back pay for dates thereafter. *See* Dkt. No. 1 at ¶¶ 14-15, 17. USCSO has also made clear that it will not seek back pay for the period beyond September 30, 2023, until it has more details about the date of the

---

[5] In its motion, Centerra states the following: "Interestingly, Plaintiff did not seek to compel Defendant's participation in the arbitration proceeding that resulted in the supplemental award. This failing is fatal to Plaintiff's effort to confirm the supplemental arbitration award, as Defendant did not consent to that proceeding or the arbitrator's jurisdiction over said proceeding." Dkt. No. 11-5 at 21 n.3. The Court disagrees. USCSO was under no obligation to "compel" Centerra to submit a brief on the issue of damages to the Arbitrator. Centerra was represented by counsel before the Arbitrator, received notice from USCSO and the Arbitrator that the Arbitrator would be deciding the issue of back pay, and made the decision to file no response as directed. It was Centerra's obligation to raise its objections to the Arbitrator, which it failed to do.

Grievant's reinstatement. *See id.* at ¶ 24. Since the Grievant has not been reinstated to date, USCSO has not petitioned the Arbitrator to determine the appropriate amount of backpay for the post-September 30, 2023 period. *See* Dkt. No. 15 at 24. What matters for purposes of the present motion is that the Supplemental Award is final and may not be revisited by the Arbitrator. *See Home Ins. Co. v. RHA/Pennsylvania Nursing Homes*, 127 F. Supp. 2d 482, 490 (S.D.N.Y. 2001) (concluding an award was final because it determined the petitioner was immediately entitled to a sum certain during the pendency of the arbitration and therefore concerned a separate and independent claim). Whether the Grievant may be entitled to additional back pay beyond September 30, 2023, is a separate and discrete issue, which in no way impacts the finality of the Supplemental Award.

Accordingly, Centerra's motion to dismiss the complaint is denied.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that Centerra's motion to dismiss the complaint (Dkt. No. 11) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 15, 2025
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge